IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: COOK MEDICAL, INC.,
PELVIC REPAIR SYSTEMS
PRODUCT LIABILITY LITIGATION                MDL No. 2440

---------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

PRETRIAL ORDER # 35
(Plaintiffs' Motion to Compel Production of Hernia Documents)

Pending before the court is Plaintiffs' Motion to Compel Production of Hernia Documents from Defendant Cook. (ECF No. 104). Defendants Cook Medical Incorporated, Cook Biotech Incorporated, and Cook Incorporated (collectively "Cook") filed a response in opposition to the motion, (ECF No. 127), and Plaintiffs filed a reply memorandum. (ECF No. 133). On Friday, April 4, 2014, the undersigned conducted a hearing on the motion at which the parties were represented by counsel. After considering the arguments of counsel, the court **GRANTS** the motion to compel as follows.

Cook Biotech Incorporated makes medical devices from non-dermis, non-crosslinked porcine small intestinal submucosa ("Biodesign Products") used to treat stress urinary incontinence ("SUI") and pelvic organ prolapse ("POP"), which are the products at issue in this litigation. Cook Biotech Incorporated also makes Biodesign Products used to repair hernias, but those products are not at issue here. Plaintiffs

1

served Cook with a request for production of documents seeking materials related to the Biodesign Products for hernia repair. Cook agreed to produce hernia repair product documents that "overlapped" with SUI and POP product documents, or that were common to all of three types of Biodesign Products, but refused to produce materials specific only to hernia repair products on the basis that those documents were "not relevant to any party's claim or defense and not reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs moved to compel the documents, arguing that all three Biodesign Products contain the "same injury-producing component" and are similar to each other in their design and manufacture. Plaintiffs emphasize that Cook has conceded that these devices are substantially equivalent in its submissions to the Food and Drug Administration. (ECF No. 104 at 7-8). Plaintiffs assert that the hernia repair product documents are likely to contain information relevant to their claims of product defect and failure to warn.

      Cook agrees that the hernia repair, SUI, and POP products do originate from the same non-crosslinked, non-dermis porcine small intestinal submucosa base. Nevertheless, Cook contends that documents specific to hernia repair products are simply not useful or relevant in this litigation given that the hernia repair products, when compared to the SUI and POP products, are implanted in different parts of the body, have different instructions for use, different training and educational opportunities, different clinical applications, and are used by surgeons who practice in completely different specialties. Cook argues that the hernia repair products are engineered with different mechanical properties and geometric configurations, and are marketed much differently than the POP and SUI products.

Despite the many differences pointed out by Cook—primarily in the use of the hernia repair products—the undersigned finds that the similarity of the raw materials and the processing of the raw materials, as well as the common aspects of the manufacturing processes used in making Cook's SUI, POP, and hernia repair products, sufficiently connect these Biodesign Products to make documents pertaining to the hernia repair products relevant under Fed. R. Civ. P. 26. *See United Oil Co., Inc.,* 227 F.R.D. 404, 412 (D.Md. 2005) (collecting cases) (Discovery of different products may be proper when the products contain the same injury-producing component as the product at issue). Therefore, the court **GRANTS** Plaintiffs' motion to compel the production of documents relating to Cook's hernia repair products.

However, having found that hernia repair product documents are relevant does not end the analysis. Simply because information is discoverable under Rule 26 "does not mean that discovery must be had." *Id.* (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004)). Under Rule 26(b)(2)(C), the court may limit the frequency or extent of otherwise appropriate discovery if the court determines that: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D. Md. 2012) (quoting

*Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D. Md. 2010)). In this case, Plaintiffs have asked for **all** documents related to hernia repair products, a request that Cook argues is overly broad. The undersigned agrees. Some reasonable limitations must be imposed on the scope of this line of discovery.

Accordingly, the parties are hereby **ORDERED** to meet and confer regarding the parameters of discovery involving materials specific to Cook's hernia repair products and shall be prepared to report their efforts at the telephonic discovery conference on Friday, April 11, 2014. If the parties cannot agree, they shall be prepared to submit proposals to the court for a ruling.

The court **DIRECTS** the Clerk to file a copy of this order in 2:13-md-2440, and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:14-cv-13946. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at **http://www.wvsd.uscourts.gov**.

**ENTERED:** April 7, 2014

_____
Cheryl A. Eifert
United States Magistrate Judge

4